# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

REBECCA L. TURNER,

    Plaintiff,

    v.                                          Case No. 05-C-1360

JO ANNE B. BARNHART,
 Commissioner of the
 Social Security Administration,

    Defendant.

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Rebecca L. Turner, commenced this action on December 29, 2005, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

## PROCEDURAL HISTORY

On May 17, 2001, the plaintiff filed an application for disability insurance benefits and supplemental income, alleging that she became disabled on October 3, 2000, due to a bad back, hip problems, foot swelling, and mental limitations deriving from depression and borderline intelligence. The plaintiff's applications were denied initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before an Administrative

Law Judge (ALJ) on January 10, 2003. The plaintiff, represented by counsel, appeared and testified, as did a vocational expert.

In a March 21, 2003 decision, the ALJ found that although the plaintiff's exertional limitations do not allow her to perform the full range of medium work, there was a significant number of available jobs in the Wisconsin area that she could perform. The ALJ concluded that the plaintiff was not under a disability as defined by the Social Security Act.

On April 1, 2003, the plaintiff submitted a request for review to the Appeals Council. The Appeals Council granted review and remanded the matter, ordering the ALJ to further develop the administrative record, including another consultative psychological evaluation if necessary. It also instructed the ALJ to give further consideration to the plaintiff's maximum residual capacity, to provide rationale with specific references to evidence of record to support those limitations, and to obtain supplemental evidence from a vocational expert to "clarify" the effect of the assessed limitations on plaintiff's occupational base. The Appeals Council was also critical of the ALJ for failing to sufficiently address the Division of Vocational Rehabilitation-sheltered workshop notes and the Social Security Administration consultative psychologists report.

The ALJ arranged a second consultative psychological evaluation, and secured the updated treatment and vocational reports that were available. On August 25, 2004, another supplemental hearing was held. The plaintiff, represented by counsel, appeared and testified, as did a vocational expert.

In an October 22, 2004 decision, the ALJ found that although the plaintiff had no past relevant work, and her non-exertional limitations do not allow her to perform the full range of medium work, there remained a significant number of jobs in the national economy that she

2

could perform. The ALJ concluded that the plaintiff was not under a disability as defined by the Social Security Act. On November 9, 2004, the plaintiff again requested that the Appeals Council review the ALJ's decision. On December 6, 2005, the Appeals Council denied this request, making the ALJ's decision the final decision of the Commissioner.

The history of this case is well summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## **APPLICABLE LAW**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medical impairment that can be expected to last for over twelve months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently employed; 2) whether the plaintiff has a severe impairment; 3) whether her impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1, which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff can perform his past relevant work; and 5) whether the plaintiff is capable of performing any other work in the national economy given her age, education and work experience. Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-23 (7th Cir. 1993).

Once the plaintiff has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the plaintiff does not have a listed impairment but cannot perform his/her past work, the burden shifts to the Commissioner to show that the plaintiff can perform some other job. See Allen v. Sullivan, 977 F.2d 385, 387 (7th Cir. 1992); Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984).

3

The plaintiff bears the burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5). However, once the plaintiff has demonstrated an impairment of sufficient severity to preclude the kind of work in which he was previously engaged, the burden shifts to the Commissioner to prove that some other kind of substantial gainful employment exists which the plaintiff is able to perform. Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001); Tom v. Heckler, 779 F.2d 1250, 1252-53 (7th Cir. 1985).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (her maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than her vocationally relevant past work.

Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Cummins v. Schweiker, 670 F.2d 81, 82 (7th Cir. 1982). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Smith v. Schweiker, 735 F.2d 267, 271 (7th Cir. 1984).

4

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work she is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 535 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995). "The Social Security Act specifically provides that 'the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.'" Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). See 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the [Commissioner's] findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz, 55 F.3d at 305 (quoting Richardson v. Perales, 402 U.S. 389, 401 [1971]); see also, Zurawski, 245 F.3d at 887.

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Richardson, 402 U.S. at 401; Jones, 10 F.3d at 523. However, even if substantial evidence

supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

## **ANALYSIS**

The plaintiff contends that the ALJ erred by ignoring the fact that the plaintiff was working in a sheltered, non-competitive work setting and not performing substantial gainful work. The plaintiff also contends that the ALJ misinterpreted and ignored relevant psychological limitations put forth in the reports of Dr. Kores, the state consultative psychologist. The plaintiff further maintains that the ALJ asked hypothetical questions of the vocation expert that included inaccurate assumptions and ignored material psychological evidence. Finally, the plaintiff contends that the ALJ ignored the opinion of her own vocational expert who concluded that the plaintiff was not performing competitive work since she was working in a sheltered workshop.

Section 404.1520 of Title 20 of the Code of Federal Regulations sets forth the five-step sequential evaluation process used to determine whether an individual is disabled as defined in 20 C.F.R. §404.1505. At the first step, the ALJ must consider a person's work activity, if any, and determine whether the person is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as "work activity that involves doing significant mental and physical activities," and that is done "for pay or profit . . . whether or not a profit is realized." 20 C.F.R. § 416.972(a)-(b). Work may be substantial even if it done on a part-time basis. 20 C.F.R. §416.972(a).

In this case, the ALJ undertook the five-step analysis found at 20 C.F.R. § 1520, and found at step one that the plaintiff has not engaged in substantial gainful activity since the onset of her disability. The ALJ proceed through the analysis, finding at step four that the plaintiff's past work did not reach the level of substantial gainful activity. The issue of whether a person's

6

past work constitutes substantial gainful employment is relevant at step one and step four. Here, the ALJ proceeded to step five and considered the plaintiff's residual functional capacity and her age, education and work experience "to see if she could make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). Thus, contrary to the plaintiff's assertions, the ALJ did not ignore the fact that the plaintiff was not engaged in substantial gainful activity.

The plaintiff also contends that the ALJ misinterpreted and ignored the opinions of Peter Kores, Ed.D., a consultative psychologist, specifically with regard to the plaintiff's low IQ scores. In assessing the plaintiff's mental status in a psychological consultation on April 6, 2004, Dr. Kores found that "her overall intellectual functioning was within a high mildly retarded classification with a Full Scale IQ index of 69." (Tr. 314). Dr. Kores reported that the plaintiff did slightly better on non-language type tasks, achieving a Performance IQ of 76 and a Verbal IQ of 68. (Tr. 315). He noted that the plaintiff scored within the low average classification on two subtests, while the remaining subtests demonstrated little variability and generalized weaknesses. (Tr. 316).

Dr. Kores stated: "This produces a Full Scale IQ index on the high end of mildly retarded." (Tr. 316). Dr. Kores assigned the plaintiff a Global Assessment of Functioning (GAF) score of 58, which indicates moderate difficulty in social, occupational or school functioning. (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 4th ed. 2000 [DSM-IV] at 34). On the Wide Range Achievement Test - Revision 111, the plaintiff's reading and arithmetic skills were measured at the fourth grade and third grade levels, respectively. Dr. Kores opined that the plaintiff "would have some difficulty in competitive employment due to very weak academic skills and cognitive deficits," which is complicated by

7

a longstanding history of alcohol dependence. (Tr. 317). However, he noted that the plaintiff's alcohol dependence had been remission for one year.

In assessing the plaintiff's mental ability to do work-related activities on a daily basis in a regular work setting, Dr. Kores noted that the plaintiff has a "good" ability to relate to co-workers and to deal with the public. (Tr. 319). Her ability to interact with supervisors and to deal with work stresses is also "good." (Tr. 320). The plaintiff only has a "fair" ability to function independently, maintain attention/concentration, use judgment and follow work rules. (Tr. 319-20). Dr. Kores found that the plaintiff has a "good" ability to understand, remember and carry out simple job instructions, although her ability to carry out detailed, non-complex instructions was only fair. (Tr. 320). The plaintiff's overall ability to make personal-social adjustments was described as "good." (Tr. 320). Dr. Kores also noted in his August 27, 2001, disability report that the plaintiff drove herself to the appointment and came alone. She also came alone to her appointment in April 2004, and had a Wisconsin driver's license at that time.

The ALJ considered Dr. Kores August 13, 2001, consultative examination of the plaintiff, as well as the psychological consultation on February 6, 2004. The ALJ acknowledged that Dr. Kores had expressed some concerns as to the plaintiff capacity for competitive employment and her alcohol use which affected her work ability. However, the ALJ noted that the plaintiff's alcohol use had not been as significant recently. The ALJ also pointed out that when Dr. Kores filled out a form as part of his most recent consultative referral, Dr. Kores found that the plaintiff had a "good ability to relate to co-workers, the general public, and supervisors, a good ability to deal with work stresses, and a good capacity to understand, remember, and carry out simple instructions." (Tr. 17).

8

The ALJ considered the plaintiff's most recent IQ scores, which measured in the 60's, but gave greater weight to the plaintiff's earlier IQ scores which were measured in the 70's. In an October 1992, psychological evaluation, the plaintiff obtained a full scale IQ score of 73, a verbal score of 71 and a performance IQ score of 77. In relying on the earlier IQ scores, the ALJ stated that "there was less likelihood of outside variables influencing the claimant [during the previous tests]." (Tr. 20). Thus, the ALJ did not misinterpret the opinions of Dr. Kores or ignore that psychological limitations that he had identified.

In reaching her decision, the ALJ also took into consideration the assessment by mental health professionals for the Wisconsin Disability Determination Services which indicated that the plaintiff had the ability to make simple work-related decisions and to sustain an ordinary routine without special supervision. She also noted the plaintiff has her own driver's license, handles her own finances and has been involved not only in unskilled work, but skilled and semi-skilled jobs as well. The record before the ALJ also indicates that the plaintiff's daily activities "are not severely limited" and that she visits with neighbors, cleans, cooks, shops and drives. (Tr.208).

In sum, the ALJ adequately considered the opinions and conclusions of Dr. Kores, including her low IQ scores. She also considered the other evidence in the record in reaching her decision.

The plaintiff further contends that the ALJ asked hypothetical questions of her own vocational expert that included inaccurate assumptions and ignored material psychological evidence. She also maintains that the ALJ ignored the opinion that the plaintiff was not performing competitive work. The plaintiff questions: "how you can ask a vocational expert to identify hypothetical jobs in a competitive market when in the question you concede that her

9

current work is not at the SGA level?" (Plaintiff's Brief in Support of Reversal of the ALJ's Decision and/or Remand at 5).

The defendant responds that the plaintiff erroneously presumes that because her past work was not substantial gainful activity, the ALJ is precluded from making a residual functional capacity assessment and a finding at step five, citing 20 C.F.R. §404.1520(g). Section 404.1520(g) of Title 20 of the Code of Federal Regulations provides states: "If we find that you cannot do your past relevant work because you have a severe impairment(s) (or you do not have any past relevant work), we will consider the same residual functional capacity (RFC) assessment we made under (e) of this section, together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work." If the ALJ concludes that a claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. Id. Thus, the issue of whether or not the plaintiff was engaged in substantial gainful activity is not a consideration under step five.

Here, the ALJ made can assessment of the plaintiff's RFC and used it to pose cumulative hypothetical questions to the vocational expert. An ALJ must include all limitations supported by the medical evidence in the record when questioning a vocational expert. Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). This requirement is designed "to ensure that the vocational expert does not refer to jobs that the applicant cannot work because the expert did not know the full range of the applicant's limitations." Id. An exception exists, however, where the vocational expert independently learned of the limitations, either through other questioning at the hearing or outside review of medical records. Id.; see Ragsdale v. Shalala, 53 F.3d 816, 818-21 (7th Cir. 1995). A hypothetical question's failure to accurately reflect a claimant's condition may be cured by a record showing that claimant, on cross-examination, made the

vocational expert aware of any of the claimant's omitted impairments. See Ragsdale, 53 F.3d at 819; Williams v. Shalala, 997 F.2d 1494, 1499-1500 (D.C. Cir. 1993).

The plaintiff asserts that the ALJ omitted several of the plaintiff's significant limitations in her hypothetical questions to the vocational expert. Specifically, she cites her use of a job coach and Dr. Kores' opinion that she would have some difficulty in competitive employment due to very weak academic skills and cognitive deficits.

After reviewing the plaintiff's work history, the vocational expert was questioned by the ALJ. The ALJ addressed hypothetical questions to the vocational expert regarding the plaintiff's ability to perform her work. Specifically, in her cumulative series of questions, the ALJ asked the vocational expert to assume that the plaintiff was 41 years old, had a 12th grade education, could do medium exertional work which is limited to performing unskilled, simple, non-complex, routine repetitive work, that she would only occasionally be able to climb, stoop, kneel, balance, and crouch, and she would only be able to engage in limited interaction with co-workers and have no contact with the public. (Tr. 397-98).

The vocational expert testified that the limitation of no public contact and limited interaction with co-workers would eliminate most of the past jobs that the plaintiff had performed. However, she testified that the plaintiff could perform the job of a dishwasher, vehicle cleaner, stock clerk and hand packager and that there were in excess of 13,000 unskilled jobs at the medium exertional level in these categories in the State of Wisconsin which the plaintiff could perform with the stated limitations. She also testified that there were in excess of 8,000 of these jobs at the light exertional level in Wisconsin.

Upon cross examination, the vocation expert testified that she reviewed all the reports in the file, although she did not have notes on Dr. Kores' report. The record shows that Dr.

11

Kores' reports were in the file provided to the vocational expert. The vocational expert testified that she did not specifically recall reading that the plaintiff was unable to handle money and that she could not do competitive work because of her IQ. However, when asked whether these factors would change her answers to the hypothetical questions posed to her, the vocational expert did not change her conclusion about the availability of jobs for the plaintiff because the jobs she had mentioned are classified as unskilled. She testified: "The tasks that would be required in the jobs would be learned through on the job training and are repetitive in nature." (Tr. 400).

Upon questioning, she also testified that she "factored in what Judge O'Grady asked her to consider," but she did not factor in everything in Dr. Kores' report. (Tr. 400). She also stated that she could not quantify how many jobs would be available if the plaintiff needed a job coach since her statistics are based on jobs in the open, competitive market. Upon review, the court finds that the hypothetical questions presented to the vocational expert properly reflected the evidence in the record. For example, Dr. Kores indicated that the plaintiff had a "good" ability to understand, remember and carry out simple job instructions, her ability to relate to co-workers, interact with supervisors and deal with work stresses is also "good." "All that is required is that the hypothetical evidence be supported by the medical evidence in the record." Erhart, 969 F.2d at 540.

Moreover, even if this court were to conclude that the hypothetical questions omitted medical evidence of the plaintiff's impairments, the vocational expert testified that she had reviewed the plaintiff's entire file prior to testifying. That file included Dr. Kores' reports. "When the record supports the conclusion that the vocational expert considered the medical reports and documents, his responses are probative of both residual functional capacity and which jobs

12

a claimant can perform, even if the hypothetical question itself does not take into account every aspect of the claimant's impairments." Id. Thus, the ALJ could properly rely on the testimony of the vocational expert in concluding that, despite her limitations, some substantial gainful employment exists which the plaintiff is able to perform. See Zurawksi, 245 F.3d at 886.

In conclusion, the court finds that the ALJ carefully considered the relevant medical and non-medical evidence in concluding that the plaintiff was not disabled during the relevant time period. Such decision is supported by substantial evidence. Therefore, the plaintiff's appeal seeking reversal or remand of the Commissioner's decision will be denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal seeking reversal or remand of the Commissioner's decision be and hereby is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of March, 2007.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge